## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**UNITED STATES OF AMERICA**

       **Plaintiff,**

**v.**                           **Case No. 06-20151-JWL**

**JERRY L. LESTER,**

       **Defendant.**

### MEMORANDUM AND ORDER

      The defendant Jerry Lester is charged in a five count indictment with making false statements to acquire firearms and with being an unlawful controlled substance user in possession of firearms.   This matter is before the court on Mr. Lester's motion to suppress (doc. #12) which challenges the validity of two searches executed on May 11, 2006[1]: (1) a search of Mr. Lester's residence located at 840 South Main in Ottawa, Kansas and (2) a search of Lester Transmission Service, Mr. Lester's place of business, located at 1515 South Main in Ottawa, Kansas.   Mr. Lester argues that the warrants were overly broad and that they were based on insufficient facts to establish probable cause.   Mr. Lester also argues that statements made by him to the agents executing the warrants were solicited in violation of his Fifth Amendment right against self-incrimination.

      The government argues that the warrants were not overly broad and there was probable

---

[1]Although there were two separate search warrants, one for each location, they were obtained in reliance on the same affidavit and listed the same items to be seized.

cause justifying the search warrants.  The government further argues that, even if there was not sufficient probable cause, the good faith exception originally announced in *United States v. Leon*, applies and thus the searches were valid.  Finally, the government argues that Mr. Lester's Fifth Amendment rights were not violated.

The court held an evidentiary hearing on the motion on December 1, 2006.  At the hearing, the government presented testimony from two witnesses: Kelly Etnier and Bruce Stukey, special agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).  After thoroughly considering the parties' arguments and the evidence, the court will deny the motion.

## I.    Findings of Fact

In March of 2006, Agent Etnier received information from ATF agents in Atlanta, Georgia, regarding an investigation of Claus Chowanietz, an individual residing in Germany, who was possibly selling unregistered firearms, or silencers, over the internet.  The Atlanta agents notified Agent Etnier of emails sent between Mr. Chowanietz and Mr. Lester[2] regarding a silencer.  The substance of these emails is set forth below.

On May 16, 2005, with a subject line of "GunsAmerica Inquiry GA#976558803 SILENCER SD 22," Mr. Lester wrote: "Hello, is your items available and do they require NFA paperwork?"  To this, Mr. Chowanietz responded: "[W]e have a couple in stock.  No papers

---

[2] After investigating the email address jadedwarrior@msn.com, which was contained in the correspondence with Mr. Chowanietz, Agent Etnier determined it belonged to Mr. Lester, who has not disputed that finding.

needed. [T]his is originally manufactured for Air Guns, but it fits on the cal. 22." Mr. Lester then wrote: "Thanks for the reply, what material is the housing made of and how much to ship to 66067?" to which Mr. Chowanietz responded: "Steel. Shipping: 14.00 USD." On May 17, 2005, Mr. Lester wrote "Good morning Hopo, give me a mailing address and I will send you the funds" and Mr. Chowanietz responded with an address in Maulburg, Germany. This information was forwarded on to Agent Etnier because the zip code 66067 corresponds to Ottawa, Kansas.

After receiving this information from the ATF agents in Atlanta, Agent Etnier began investigating Mr. Lester. Agent Etnier determined that in July of 2005 and February of 2006, Mr. Lester had purchased multiple firearms from a pawn shop in Ottawa, Kansas.[3] On both occasions Mr. Lester had listed an address in Waverly, Kansas, on the required ATF paperwork.[4] Mr. Lester's Kansas driver's license also listed the address in Waverly. However, the pawn shop's internal database indicated that Mr. Lester resided in Ottawa, Kansas. Agent Etnier also inquired of the postal service and discovered that Mr. Lester was receiving mail at the two Ottawa addresses but not at the Waverly address.[5]

On March 9, 2006, the current resident of the Waverly address told Detective Thomas Johnson that he had moved into the residence about a week earlier. He also told Detective

---

[3]One of the firearms Mr. Lester purchased could accommodate the silencer referenced in the emails between Mr. Lester and Mr. Chowanietz.

[4]Agent Etnier testified that providing an inaccurate address on an ATF form constitutes a material misrepresentation in violation of federal law.

[5]Agent Etnier testified that he made this inquiry sometime between March 3, 2006, and March 9, 2006.

Johnson that the residence had been unoccupied since October 2005 and that Jerry Lester had previously occupied the residence, but was not living there in February of 2006.

On April 17, 2006, Agent Etnier contacted the owner of the Waverly residence, Forest James. Mr. James told Agent Etnier that Mr. Lester had previously rented the Waverly residence starting in March or April of 2005 and that the last rent payment he had received from Mr. Lester was in June of 2005. Mr. James also told Agent Etnier that he had contacted Mr. Lester in January or February of 2006 to collect back rent from him. At that time, Mr. Lester told Mr. James that he had not been living at the Waverly address for six to eight months and that he had purchased a home in Ottawa. Agent Etnier also determined that Mr. Lester was paying for utilities at the two addresses in Ottawa. Agent Etnier then obtained confirmation from ATF's National Firearms Branch that Mr. Lester currently had no firearms registered to him in that registry.

Based on all of this information, Agent Etnier applied for and obtained search warrants for Mr. Lester's business and residence on May 9, 2006.[6] The affidavit contained the information set forth above. It also included information pertaining to an Atlanta ATF agent's successful purchase of a silencer from Mr. Chowanietz. The affidavit also contained the following paragraph:

---

[6]The email correspondence between Mr. Lester and Mr. Chowanietz took place roughly one year prior to Agent Etnier obtaining the search warrants in this case. However, Agent Etnier testified at the hearing and included information in the affidavit indicating that individuals who acquire firearms and silencers typically keep those items for a period of time. He further testified that, regardless of the time that had passed since the investigation began in Atlanta, the computer information sought by the agents could be retrieved despite the delay.

40.   The criminal offenses specifically referenced in this affidavit relate to the illegal possession of firearms (silencers) not registered in the National Firearms Registration and Transfer Record, the illegal manufacture of a firearm, the illegal receipt of possesion of a firearm (silencer) which is not identified by a serial number as required by this chapter and the illegal receipt or possession of a firearm which has been imported or brought into the United States; all of which are in violation of Title 26, United States Code, Sections 5861(d), 5861(f), 5861(I) and 5861(k).   And lastly, the unlawful acquisition of a firearm from a licensed dealer, in violation of Title 18, United States Code, Section 922(a)(1)(6).

The warrants listed the following items to be seized:

**Evidence to Be Searched for and Seized:**

**Firearms (Silencers)**
Firearms (silencers), silencer parts, literature and/or reference materials relating to silencers, tools and/or machines or other devices used in attaching a silencer to a firearm.

**Records/Documents**

Records, documents, books or photographs, whether contained on paper in handwritten, typed, photocopied records, documents or photographs either contained on paper in handwritten, typed, photocopied or printed form or stored on computer printouts.  Any and all information and/or data stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer or with the aide of computer-related equipment.  This media includes, tape, cassette, fixed hard disk, diskette, photographic film or any other medium, including but not limited to any inventory list containing the names, addresses and telephone numbers of firearm customers including electronic notebooks.

**Records Pertaining to Firearms**

Receipts, memoranda, and/or notes documenting the acquisition, receipt, purchase and disposition, sale or shipping of firearms (silencers), including; invoices; purchase orders; canceled checks; bank records, or any other financial documents; gun show attendance receipts (or other supporting documents); gun show correspondence (to include advertisements and flyers): and other papers pertinent to the transportation, ordering, sale, and distribution of the firearms (silencers).

**Records Pertaining to Credit Card Sales**

Manual and/or electronic credit card processing materials and equipment; including, but not limited to, credit card processing transactions, sales receipts, memoranda and/or notes documenting credit card transactions, records of credit card billing, records of credit card statements, and records of credit card remittances.

**Indicia of Control of the Premises**

Documents that tend to show the identity of persons controlling, occupying, possessing, residing in or owning the subject premises, including, but not limited to, rental agreements and records, leases, property acquisition records, utility and telephone bills and receipts, photographs, answering machine tape recordings, vehicle records, cancelled mail envelopes, correspondence, personal identification documents and cellular phone bills.

**Computer Hardware to be Seized**

Any and all electronic devices which are capable of analyzing, creating, displaying, converting, or transmitting electronic or magnetic computer impulses or data. These devices include computers, computer components, computer peripherals, word processing equipment, modems, monitors, printers, plotters, encryption circuit boards, optical scanners, external hard drives, and other computer-related electronic devices.

**Computer Software to be Seized**

Any and all instructions or programs stored in the form of electronic or magnetic media, which are capable of being interpreted by a computer, or related components. The items to be seized include operating systems, application software, utility programs, compilers, interpreters, and other programs or software used to communicate with computer hardware or peripherals either directly or indirectly via telephone lines, radio or other means of communications.

At around 6:27 a.m. on May 11, 2006, Agents Etnier and Stukey, accompanied by other law enforcement officials, made contact with Mr. Lester at his transmission shop in Ottawa.

6

They informed Mr. Lester that he was not under arrest, but that they were there to execute search warrants at his business and residence.  The agents conducted a quick pat down of Mr. Lester and Mr. Lester agreed to cooperate with the execution of the search warrants and he provided keys to his business.

While the search was being executed at Mr. Lester's business, Mr. Lester informed the agents that he had two large dogs at his residence that he did not want to be harmed, so he agreed to ride back to the residence with Agent Etnier to help secure the dogs and let the agents into the house. While traveling to his residence, Mr. Lester asked Agent Etnier what the agents were hoping to find.  Agent Etnier told him they were searching for silencers, to which Mr. Lester responded that he had never purchased a silencer but was interested in manufacturing them.

While in the vehicle with Mr. Lester, Agent Etnier also asked him if there was anything else that the agents should know about at his residence that could be potentially harmful.  Mr. Lester informed him that the agents would find marijuana and related paraphernalia.  He informed Agent Etnier that he was a daily user of marijuana for some unspecified health conditions. Agent Etnier testified that at that point, he realized that Mr. Lester must not have disclosed this information when he purchased the firearms from the pawn shop because it is a federal violation for a user of marijuana to purchase firearms from a federally licensed dealer. Furthermore, Agent Etnier knew it was a violation of federal law for someone who currently uses marijuana on a daily basis to possess firearms.

Once they arrived at the residence, Mr. Lester and Agent Stukey secured the dogs.  Then, Mr. Lester directed Agent Stukey to the marijuana that he had mentioned to Agent Etnier, which

was found in a container under the couch.  Mr. Lester was escorted outside the residence where he waited with Agent Stukey while the other agents executed the search warrant.

Agent Stukey testified that while they were waiting outside the residence, he informed Mr. Lester that he was not under arrest and free to go or to stay if he wished while the search warrant was executed.  Agent Stukey then asked Mr. Lester some questions about gun shows he had participated in previously.  He also asked Mr. Lester about the marijuana in the house, to which Mr. Lester replied that he used it on a daily basis like medicine.  Agent Stukey asked Mr. Lester where he obtained the marijuana and Mr. Lester replied that he did not want to discuss that and that he did not want to talk about the marijuana anymore.  Agent Stukey then told Mr. Lester that because of his illegal usage of a controlled substance, any ammunition or firearms would have to be seized.  After the search was conducted at the residence, Agent Stukey gave Mr. Lester a ride back to his vehicle, which was still at Mr. Lester's business.

From Mr. Lester's business, the agents seized: a letter from a bank to Mr. Lester, nine flyers for gun shows, an invoice from "A Call to Arms," correspondence addressed to Mr. Lester, an advertisement from GunBroker.com, one copy of shotgun news, one computer, fifteen disks, and one email message to jadedwarrior@msn.com.  From Mr. Lester's residence, pursuant to the warrant the agents seized: indicia of residency and business in Mr. Lester's name, one computer tower, computer disks, an email document, a bank record document in Mr. Lester's name, and a T-Mobile "Blackberry."  Pursuant to plain view the agents seized: six firearms, one folding stock, 10,058 rounds of ammunition, assorted items of drug paraphernalia, and a pill bottle.  The officers did not locate a silencer at Mr. Lester's residence or his business.

8

Agent Etnier testified that about six or seven law enforcement officials were present while the search of Mr. Lester's residence was being conducted and that maybe four or five agents conducted the search at Mr. Lester's business. Both Agents Etnier and Stukey testified that they were not aggressive or threatening toward Mr. Lester, nor did they see any other agent act aggressively toward or threaten Mr. Lester. Agent Etnier further testified that he never made any promises to Mr. Lester.

Mr. Lester argues that the search warrants were overbroad and lacked probable cause; therefore, he seeks to suppress the evidence obtained pursuant to those search warrants. Furthermore, he seeks to suppress the statements made to Agents Etnier and Stukey regarding his marijuana use, claiming that those statements were elicited in violation of his Fifth Amendment rights against self-incrimination, or, alternatively that they constitute fruit of an illegal search. The government argues that the good faith doctrine emanating from *United States v. Leon*, 468 U.S. 897 (1984) validates the search, therefore negating the need to suppress either the evidence or the statements. Furthermore, the government argues that Mr. Lester's statements were not elicited in violation of his Fifth Amendment rights.

## II.    Analysis

### A.    *Overbreadth of the Warrants*

Mr. Lester first argues that the warrants were overly broad, thus violating the Fourth Amendment's particularity requirement. He specifically argues that the warrants lacked limiting language and essentially allowed for a "fishing expedition." The court agrees that certain

portions of the warrant violate the Fourth Amendment's particularity requirement. However, the court concludes that defect may be cured by severing those portions from the warrant.

The Tenth Circuit has adopted the doctrine of severance with respect to search warrants. *See United States v. Naugle*, 997 F.2d 819 (10th Cir. 1993) and *United States v. Brown*, 984 F.2d 1074 (10th Cir. 1993). Under that doctrine, the valid portions of a warrant may be severed from the invalid portions, and only those items seized under the valid portions, or lawfully seized while executing the valid portions, are admissible. *Brown*, 984 F.2d at 1078. However, the severance doctrine only applies if "the valid portions of the warrant [are] sufficiently particularized, distinguishable from the invalid portions, and make up the greater part of the warrant." *Naugle*, 997 F.2d at 882.

The Tenth Circuit recently provided district courts with guidance in determining whether and how the severance doctrine applies. *United States v. Sells*, 463 F.3d 1148 (10th Cir. 2006). A multi-step analysis must be performed. *Id.* at 1151. First, the warrant must be divided in a "common-sense, practical manner into individual clauses, portions, paragraphs, or categories." *Id.* If "at least a part of the warrant is sufficiently particularized and supported by probable cause" the court must proceed to determine whether that portion is "distinguishable from the invalid portions." *Id.* Finally, the warrant is examined "on its face to determine whether the valid portions make up the greater part of the warrant by examining both the quantitative and qualitative aspects of the valid portions relative to the invalid portion." *Id.* If the valid portions make up the greater part of the warrant, then those portions are severed and only the evidence seized pursuant to the invalid portions is suppressed. *Id.*

1.     Divide the warrants

In this case, dividing the warrants is relatively easy.  The warrants separate the items to be seized into seven categories: (1) firearms (silencers), (2) records/documents, (3) records pertaining to firearms, (4)  records pertaining to credit card sales, (5) indicia of control of the premises, (6) computer hardware, and (7) computer software.  Each category begins a new paragraph and is indicated by a bold, underlined heading.  The court concludes that each category constitutes a separate and distinct part of the warrants.

2.     Examine each part

Next, the court must examine each part to determine whether it is "sufficiently particularized."  The Fourth Amendment requires that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized."  U.S. Const. amend IV.  In *United States v. Leary*, 846 F.2d 592 (10th Cir. 1988), the Tenth Circuit set forth a practical test for evaluating the particularity requirement.  The *Leary* court explained:

> A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized.  Even a warrant that describes the items to be seized in broad or generic terms may be valid when the description is as specific as the circumstances and the nature of the activity under investigation permit.  However, the fourth amendment requires that the government describe the items to be seized with as much specificity as the government's knowledge and circumstances allow, and warrants are conclusively invalidated by their substantial failure to specify as nearly as possible the distinguishing characteristics of the goods to be seized.

*Id.* at 600.

The court must also determine whether each part is supported by probable cause.

11

Probable cause requires a magistrate judge to find that:

> [G]iven all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for concluding' that probable cause existed.

*Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). Probable cause does not require certainty that evidence will be found at a certain location. *United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997). "[I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *United States v. Soderstrand*, 412 F.3d 1146, 1152-53 (10th Cir. 2005).

a.   Valid portions

The court will begin by examining the first and third categories, which authorized the seizure of firearms (silencers) and records pertaining to firearms. The court concludes that these sections were sufficiently particular because the word "silencer" consistently modified firearm throughout both of those paragraphs. Consequently, the warrant limited the agents' search in those categories to the specific activity being investigated: the receipt of an illegal silencer.

The court also concludes that these categories were supported by probable cause. The specific violations indicated in the affidavit related to the illegal receipt of a silencer. The affidavit set forth the email exchange between Mr. Lester and Mr. Chowanietz, which included Mr. Lester stating "give me a mailing address and I will send you the funds" and Mr. Chowanietz providing a mailing address. The court finds this was sufficient for the magistrate to find there was a fair probability that Mr. Lester had consummated the purchase of a silencer.

Thus, there was a fair probability that evidence of this crime, in the form of either a silencer or records pertaining to the purchase of a silencer could be found at Mr. Lester's business or residence.  Accordingly, the court concludes there was a "substantial basis for concluding that probable cause existed" with respect to those items listed in the first and third categories.  *Gates*, 462 U.S. at 239 (1983).

The court also concludes that the fifth category, indicia of control of the premises, was sufficiently particular because it was limited to documents showing the identity of the owner of the premises.  This language was specifically related to the investigation of Mr. Lester's alleged misrepresentation of his address on the ATF form.

The fifth category was also supported by probable cause.  The affidavit contained the following information: (1) Mr. Lester had listed the Waverly address on the ATF form in February of 2006; (2) the current resident of the Waverly address indicated to Detective Johnson that Mr. Lester did not live at the residence in February of 2006; (3) Mr. James, the owner of the residence, had not received a rent payment from Mr. Lester since June of 2005; (4) Mr. James said that Mr. Lester himself had denied living at the residence for the six to eight months prior to their conversation in late January of 2006 or early February of 2006; (5) Mr. Lester was not receiving mail at the Waverly address in early March of 2006; and (6) Mr. Lester was paying utilities at the two locations in Ottawa. Again, the court finds this was sufficient for the magistrate to find there was a fair probability that Mr. Lester had misrepresented his address on the ATF form.  Thus, there was a fair probability that evidence could be found at Mr. Lester's business and residence indicating that he resided at the Ottawa address in February of 2006,

which provided a "substantial basis for concluding that probable cause existed" with respect to those items listed in the fifth category. *Gates*, 462 U.S. at 239 (1983).

The court also finds that the sixth and seventh categories, authorizing the seizure of computer hardware and software, are valid. The terms of these categories are quite particular; they clearly authorized the seizure of Mr. Lester's computer and software.[7] Furthermore, as mentioned above, probable cause existed to believe Mr. Lester had purchased an illegal silencer. The evidence supporting this finding consisted of emails sent between Mr. Lester and Mr. Chowanietz. Accordingly, the court finds the magistrate judge had a substantial basis for concluding that evidence of this crime could be found on computer hardware or software located at Mr. Lester's residence or business.

b.      Invalid portions

The court concludes that the second and fourth categories were not sufficiently particular and thus were constitutionally invalid portions of the warrants. Because the court concludes these categories were impermissibly broad, it will not evaluate whether they were supported by sufficient probable cause.

The second category authorized the agents to search for and seize virtually any and all

---

[7]The court is well aware of the cases requiring that warrants authorizing computer searches must "affirmatively limit the search to evidence of specific federal crimes or specific types of material." *United States v. Riccardi*, 405 F.3d 852 (10th Cir. 2005). *See also United States v. Carey*, 172 F.3d 852 (10th Cir. 2005). However, there was no indication at the hearing that any evidence had been recovered from Mr. Lester's computer. Furthermore, no evidence was presented at the hearing regarding the method in which Mr. Lester's computer was searched nor has Mr. Lester contended that it was searched in an unconstitutional manner. Accordingly, the issue of particularity with respect to the search of Mr. Lester's computer is not presently before the court and it will not be addressed.

14

records and documents.  There was no language limiting the search and seizure to the specific conduct being investigated: the illegal receipt of a firearm and material misrepresentation on the ATF form.  Therefore, the court concludes that the broad and generic terms in the "records/documents" category were not "as specific as the circumstances and the nature of the activity under investigation permit" as required by *Leary*.  846 F.2d at 600.

Similarly, the fourth category authorized the agents to seize  all records pertaining to credit card sales, with no language limiting the agents to credit card sales related specifically to firearms or silencers.  Mr. Lester runs a transmission business, making it highly likely that he would have a large number of credit card records pertaining to customers of that business which would have nothing to do with firearms transactions.  Therefore, the lack of limiting language in this category fails to "ensure that [the] search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Id.*

3.      Valid portions distinguishable from invalid portions

The Circuit's opinion in *Sells* instructs that under *Naugle*, the constitutionally valid portions of the warrant must be "distinguishable from the invalid portions" in order for the severability doctrine to apply.  *Sells*, 463 F.3d at 1158.  The warrants in this case, similar to the one in *Sells*, contain "categories of items to be seized describ[ing] distinct subject matter in language not linked to language of other categories, and each valid category retains its significance when isolated from the rest of the warrant." *Id.*  Accordingly, the court concludes that the valid portions may be severed from the invalid portions.

4.      Valid portions make up greater part of the warrant

15

Finally, the court must determine whether the valid portions make up the greater part of the warrants. "Total suppression may still be required even where a part of the warrant is valid (and distinguishable) if the invalid portions so predominate the warrant that the warrant in essence authorizes 'a general exploratory rummaging in a person's belongings.'" *Sells*, 463 at 1158 (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). Severability is prohibited only when the valid portion of the warrant is not substantial. *Id.* (citing *United States v. Soussi*, 29 F.3d 565, 568 (10th Cir. 1994)). Furthermore, "the 'greater part of the warrant' analysis focuses on the warrant itself rather than upon an analysis of the items actually seized during the search." *Id.* at 1159 (citing *Brown*, 984 F.2d at 1078).

The court has concluded that five of the seven categories are valid and two of the seven categories are invalid. However, "merely counting parts without any evaluation of the practical effects of those parts is an improperly 'hypertechnical' interpretation of the search authorized by the warrant." *Id.* at 1160. "Common sense indicates that we must also evaluate the relative scope and invasiveness of the valid and invalid parts of the warrant." *Id.* The court must employ "a holistic test that examines the qualitative as well as the quantitative aspects of the valid portions of the warrant relative to the invalid portions to determine whether the valid portions 'make up the greater part of the warrant.'" *Id.*

In this case, the focus of the government's investigation was to determine whether Mr. Lester had illegally purchased a silencer and whether he had lied on the ATF form. Accordingly, the valid portions of the warrants are the most important because they authorize the seizure of the items most likely to link Mr. Lester to these crimes. The invalid portions, pertaining to

records/documents and credit card records are relatively insignificant, both qualitatively and quantitatively, to the warrant as a whole. Furthermore, the court finds the invalid portions are not so "broad and invasive that they contaminate the whole warrant." *Id.* Accordingly, the court concludes that the valid portions "make up the greater part of the warrant."

5.    Sever and suppress

The court concludes that severance is proper because the valid portions of the warrants in this case were "sufficiently particularized, distinguishable from the invalid portions, and ma[d]e up the greater part of the warrant." *Naugle*, 997 F.2d at 822. The severance doctrine requires suppression of evidence seized pursuant to the invalid portions of the warrant, but "evidence seized pursuant to the valid portions of the warrant or lawfully seized during execution of the valid portions is admissible." *Sells*, 463 F.3d at 1161. After examining the list of items seized from Mr. Lester's business and residence, the court concludes that everything was seized pursuant to the valid portions of the warrant or pursuant to the plain view doctrine. Accordingly, none of the evidence was seized pursuant to the invalid portions and thus none of the evidence needs to be suppressed.

The plain view doctrine allows law enforcement officials to seize evidence of a crime without violating the Fourth Amendment if "(1) the officer was lawfully in a position from which the object seized was in plain view, (2) the object's incriminating character was immediately apparent (i.e., there was probable cause to believe it was contraband or evidence of a crime), and (3) the officer had a lawful right of access to the object." *United States v. Thomas*, 372 F.3d 1173, 1178 (10th Cir. 2004). *See also Horton v. California*, 496 U.S. 128,

136-37 (1990).

The court's determination that the redacted warrants were not overly broad and were valid under the good faith doctrine, as discussed below, renders the agents' searches pursuant to those warrants valid. Therefore, the agents were lawfully in Mr. Lester's residence when they viewed the drug paraphernalia and firearms. As for the marijuana and drug paraphernalia seized, once Mr. Lester pointed it out to Agent Stukey, those items were in plain view and their incriminating character was obviously immediately apparent. As for the seizure of firearms that were not silencers, they were seized in plain view and once the agents knew Mr. Lester was a daily user of a controlled substance, the agents had probable cause to believe his possession of those firearms was evidence of a crime. Therefore, the court concludes that none of the evidence seized pursuant to the two search warrants in this case should be suppressed.

B.     *Probable Cause and the Good Faith Doctrine*[8]

The good faith doctrine evolved because "when police officers act in good faith and reasonable reliance on a search warrant, the evidence obtained during the search should not be suppressed even if the warrant was lacking in probable cause." *United States v. Lora-Solano*, 330 F.3d 1288, 1294-95 (10th Cir. 2003) (citing *Leon*, 468 U.S. at 913; *United States v. Price*,

---

[8] The court exercises its discretion to proceed directly to the analysis of the good faith doctrine in this case without first addressing the underlying issue of probable cause. *See United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000)(citing *United States v. Leon*, 468 U.S. 897, 924-25 (1984)("In reviewing suppression motions, courts have the discretion to proceed directly to an analysis of the good-faith exception without first addressing the underlying Fourth Amendment questions."). *See also United States v. Dahlman*, 13 F.3d 1391, (10th Cir. 1993)("[T]he rule set forth in *Leon* concerning sequential order of analysis in good faith cases is primarily one of discretion.").

265 F.3d 1097, 1102 (10th Cir. 2001)).  This doctrine protects "the exclusionary rule's purpose of deterring improper police action, rather than punishing errors made by magistrates." *United States v. Gonzales*, 399 F.3d 1225, 1229 (10th Cir. 2005).

The doctrine upholds the authority granted to law enforcement agents who obtain a valid search warrant.  Because searches approved by a warrant "are favored," "a magistrate's determination that probable cause exists is entitled to great deference." *Gonzales*, 399 F.3d at 1228-29.  Likewise, officers are generally not required to second-guess the magistrate's decision in granting a warrant.  Accordingly, "evidence obtained pursuant to a warrant that is later found to be defective is not properly excluded when the warrant is relied on by the officers in objective good faith." *Id.* (citing *Leon*, 468 U.S. at 916).  Rather than decide the issue de novo in hindsight, this court must give "great deference" to the issuing judge's finding of probable cause. *United States v. Le*, 173 F.3d 1258, 1265 (10th Cir. 1999).

To be sure, "the deference given to such warrants 'is not boundless.'" *Gonzales*, 399 F.3d at 1229.  The Supreme Court has recognized four situations in which the good faith exception does not apply: (1) "if the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth[;]" (2) if the issuing magistrate "wholly abandons [his or her] judicial role[;]" (3) if the affidavit in support of the warrant so lacks "indicia of probable cause as to render official belief in its existence entirely unreasonable[;]" and (4) if the warrant is "so facially deficient that the executing officer could not reasonably believe it was valid." *United*

19

*States v. Danhauer*, 229 F.3d 1007 (citing *Leon*, 468 U.S. at 922-23).[9]

1.     Affiant's dishonesty or reckless disregard for the truth

Mr. Lester first argues that Agent Etnier acted in "reckless disregard for the truth" by not informing the Magistrate that Mr. Lester "may have had exclusive control and possession of the Waverly address as late as February 2006." The *Gonzales* court held that "to establish a lack of good faith where information has been omitted from the affidavit, the defendant must prove by a preponderance of the evidence that the officer acted intentionally or recklessly." *Gonzales*, 399 F.3d at 1229 (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). The court concludes that Mr. Lester has failed to meet that burden in this case

Neither Agent Etnier nor any other law enforcement official went to the Waverly residence in February of 2006 to determine whether Mr. Lester was in fact living there. However, as mentioned above, Agent Etnier was armed with a significant amount of information indicating that Mr. Lester lived in Ottawa in February of 2006 and not in Waverly, as he had indicated on the ATF form. This information was enough to give Agent Etnier a reasonable basis for concluding that Mr. Lester did not in fact have exclusive control and possession of the Waverly address in February of 2006 when he filled out the ATF form. At most, Mr. Lester can only establish that Agent Etnier omitted the information regarding the remote possibility that Mr. Lester was living at the Waverly residence in February out of "'negligence or innocent mistake,'

---

[9]Mr. Lester has presented no argument that the issuing magistrate wholly abandoned his judicial role in this case and the court has already determined the warrants to be valid, thus they are not facially deficient. Accordingly, the court will not address those issues.

which is insufficient to overcome a finding of good faith.'" *Gonzales*, 399 F.3d at 1229 (citing *Franks*, 438 U.S. at 171).   Therefore, the court concludes Agent Etnier was not reckless or intentionally dishonest in the affidavit and Mr. Lester's first argument against applying the good faith doctrine fails.

2.      Indicia of probable cause

The Tenth Circuit has cautioned that good faith under *Leon* is not established merely because "the [agent] employed a reasonable process in seeking the warrant." *Gonzales*, 399 F.3d at 1230. Law enforcement officials must rely on their own professional experience "and are presumed to have a reasonable knowledge of the law." *Id.* (citing *Leon*, 468 U.S. at 919 n.20). This court cannot find good faith if a "reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* (citing *Leon*, 468 U.S. at 922 n.23). "Under this standard, when the underlying documents are 'devoid of factual support,' an officer cannot be said to have relied on them in good faith." *Id.* (citing *United States v. Corral-Corral*, 899 F.2d 927, 939 (10th Cir. 1990)).

Making a practical, common-sense determination, probable cause existed if Agent Etnier's affidavit established "a fair probability that contraband or evidence of a crime" existed at Mr. Lester's business or residence.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Probable cause does not require certainty that evidence will be found at a certain location. *United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997). "[I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' " *United States v. Soderstrand*, 412 F.3d 1146, 1152-53 (10th Cir. 2005).

In this case, the warrants and supporting affidavits were not so lacking in indicia of probable cause that the agents' reliance on them in conducting the search was objectively unreasonable. The affidavits supporting the warrants were "neither a 'bare bones' affidavit, nor [were they] 'devoid' of facts." *Corral-Corral*, 899 F.2d at 934 (citations omitted). The specific violations indicated in the affidavit related to the illegal receipt of a silencer. As discussed previously in this memorandum and order, the email exchange between Mr. Chowanietz and Mr. Lester indicated a fair probability that Mr. Lester had purchased a silencer. The court concludes this was sufficient to support a practical, common-sense determination that there was a fair probability that the agents would find evidence at Mr. Lester's home or business indicating he had in fact consummated the purchase of a silencer. Thus, the affidavits and warrants were not so lacking in indicia of probable cause that the agents were objectively unreasonable in relying on them.

C.     *Mr. Lester's Statements*

Mr. Lester argues that the statements he made to Agents Etnier and Stukey regarding his marijuana use should be suppressed because they constitute fruits of an illegal search. In this case, however, the court has concluded that the redacted warrants were valid and the agents reasonably relied on them in good faith. Therefore, Mr. Lester's statements were not obtained pursuant to an unlawful search and Mr. Lester's argument to that effect is moot.

Mr. Lester relies on *United States v. Leary*, 846 F.2d 592 (10th Cir. 1988) in arguing that because of the coercive atmosphere, "[a] search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid." *Id.* at 598.

The court finds this argument irrelevant because it has found the search to be valid, and therefore does not need to address the issue of whether Mr. Lester consented to the search.

To the extent Mr. Lester argues a violation of his Fifth Amendment rights against self-incrimination under *Miranda v. Arizona*, 384 U.S. 436 (1966), the court rejects that contention because there is no evidence that Mr. Lester was in custody at the time he made the incriminating statements. "It is well established that police officers are not required to administer *Miranda* warnings to everyone whom they question." *United States v. Erving L.*, 147 F.3d 1240, 1246 (10th Cir. 1998)(quotation omitted). Rather, *Miranda* applies only to individuals who are in "custodial interrogation." *Miranda*, 384 U.S. at 444. The Supreme Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* Subsequently, the Court "clarified that a determination of whether an individual was in custody must be made on the totality of the circumstances, and the ultimate inquiry 'is simply whether there [was] a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."'" *United States v. Rith*, 164 F.3d 1323, 1332 (10th Cir. 1999)(citing *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492 (1977))).

After carefully reviewing the totality of the circumstances surrounding Mr. Lester's exchange with the agents, it is clear to the court that Mr. Lester was not under arrest when he made the incriminating statements to Agents Etnier and Stukey, nor was his freedom of movement restrained to the degree associated with a formal arrest. Both agents testified that on

numerous occasions they told Mr. Lester he was not under arrest and was free to leave. Although Mr. Lester was escorted out of the house and was not allowed to re-enter while the search was being executed, these limitations did not restrain his movement to the degree of a formal arrest.

Although there were a number of agents conducting the search, when Mr. Lester made the incriminating statements, only Agent Etnier or Agent Stukey was present. Agents Etnier and Stukey never drew their weapons, and did not handcuff Mr. Lester or otherwise physically restrain him. Furthermore, there is no indication that Agents Etnier and Stukey harassed, coerced, or threatened Mr. Lester while questioning him. Nothing in the record indicates that the agents engaged Mr. Lester in prolonged questioning. In fact, Mr. Lester indicated his desire to discontinue the discussion with Agent Stukey, who adhered to that request. Based on the totality of the circumstances, the court concludes that Mr. Lester was not in custody because he was not "deprived of his freedom of action in any significant way"; therefore, the questions posed to him by Agents Etnier and Stukey did not violate his rights under *Miranda*.

Even though Mr. Lester's *Miranda* rights were not violated, the court must still determine whether his Fifth Amendment right against self-incrimination was violated. *United States v. Roman-Zarate*, 115 F.3d 778, 783 (10th Cir. 1997). "The [F]ifth [A]mendment's privilege against self-incrimination prohibits the admission of incriminating statements where governmental acts, threats or promises cause the defendant's will to become overborne," thus rendering the statements involuntary. *United States v. Matthews*, 942 F.2d 779, 782 (10th Cir.1991). In determining whether the defendant's statements were voluntary, the court must

look at the totality of the circumstances, "including the characteristics of the defendant and the details of the interrogation." *Roman-Zorate*, 115 F.3d at 783 (citing *United States v. Glover*, 104 F.3d 1570, 1579 (10th Cir. 1997) and *United States v. Erekson*, 70 F.3d 1153, 1157 (10th Cir. 1995)).

Agent Etnier testified at the hearing that approximately four or five agents executed the search at Mr. Lester's business and approximately six or seven executed the search at his residence.  However, Agent Etnier testified that he never made Mr. Lester any promises. Furthermore, both Agent Etnier and Agent Stukey testified that they never threatened Mr. Lester or acted aggressively towards him.  In light of Mr. Lester notifying the agents of the two dogs at his residence, the court does not construe Agent Etnier's question of whether there was anything else he should know about at the house as a threat.  Agent Etnier testified that he asked that question out of concern for the safety of himself and the other executing agents.

As discussed above, there was no indication that the agents extensively questioned Mr. Lester.  There is no evidence suggesting that Mr. Lester's age, lack of education, or intelligence rendered him unusually susceptible to coercion; in fact, he ran his own business.  *See Roman-Zarate*, 115 F.3d at 783.   Furthermore, when Mr. Lester expressed his desire to end the conversation, Agent Stukey honored that request.  This indicates to the court Mr. Lester's ability to understand and voluntarily end the conversation. The court concludes that Mr. Lester's will was not overborne, therefore he voluntarily made the incriminating statements to Agents Etnier and Stukey and his Fifth Amendment rights were not violated.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion to suppress (doc. #12) is denied.

**IT IS SO ORDERED.**

Dated this 30th day of January, 2007.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

26