**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

**United States of America,**

**Plaintiff,**

**v.** **Case No. 06-20151-JWL**

**Jerry L. Lester,**

**Defendant.**

# MEMORANDUM AND ORDER

In 2007, a jury convicted Jerry L. Lester of one count of making false statements to acquire firearms in violation of 18 U.S.C. § 922(a)(6) (Count 3) and two counts of being an unlawful user of a controlled substance in possession of firearms in violation of 18 U.S.C. § 922(g)(3) (Counts 4 and 5). The court sentenced Mr. Lester to 27 months imprisonment, followed by two years of supervised release. Mr. Lester unsuccessfully appealed to the Tenth Circuit. *United States v. Lester*, 285 Fed. Appx. 542, 548 (10th Cir.2008). Mr. Lester completed his custodial sentence and, in May 2011, the court terminated his term of supervised release. Since that time, Mr. Lester filed three petitions for coram nobis relief which the court denied. The Circuit affirmed each of the court's decisions denying relief. *See United States v. Lester*, 615 Fed. Appx. 507, 509 (10th Cir. 2015); *United States v. Lester*, 557 Fed. Appx. 788, 792 (10th Cir. 2014); *United States v. Lester*, 453 Fed. Appx. 810, 811 (10th Cir. 2011).

Mr. Lester has now filed another petition for coram nobis relief (doc. 274). In that petition, he contends that his convictions under § 922(g)(3) should be vacated under the Supreme Court's decision in *United States v. Hemani*, 146 S. Ct. 1677 (2026) and that his conviction under §

922(a)(6) should be vacated because the search warrant was defective or, alternatively, that it should be vacated based on *Hemani*. The government agrees that Mr. Lester is entitled to coram nobis relief with respect to his § 922(g)(3) convictions and that those convictions must be vacated. The government opposes Mr. Lester's petition with respect to his § 922(a)(6) conviction on the grounds that Mr. Lester cannot satisfy the requirements for coram nobis relief. As will be explained, the court grants the petition with respect to the § 922(g)(3) convictions and denies the petition with respect to the § 922(a)(6) conviction.

**Factual Background**

The record in this case establishes the following facts.[1] In February 2005, Kevin Srivastava, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") who was based in Atlanta, Georgia, received information that an individual was selling firearm silencers on a website called gunsamerica.com. This information concerned Agent Srivastava because a silencer is considered a firearm and must be registered in the National Firearms Transaction and Registry record. Agent Srivastava followed up on this information by accessing the website and using an undercover email address and screen name to initiate contact with the purported seller. Through his communications, Agent Srivastava learned that the seller was living in Germany and had numerous items for sale, including a "silencer SD22." Agent Srivastava emailed the seller in Germany, whom he identified as Claus Chowanietz, and told him that he wanted to purchase the "silencer SD22." Chowanietz advised him that he had the item for

[1] These facts were established at trial or at the hearing on Mr. Lester's motion to suppress evidence discovered and statements made during the execution of the search warrant in this case.

sale and represented that "the silencer was originally designed for air guns but could be put onto a Walther P22 handgun," which is a conventional .22 caliber handgun manufactured by a German company. Agent Srivastava sent him the money for the silencer and received it in the mail several weeks later. Agent Srivastava noticed that there was no serial number on the silencer as required by the National Firearms Act. He sent the silencer to ATF's Firearm and Technology Branch for examination; after conducting tests, the Technology Branch "determined that the silencer was indeed a legal silencer as governed by the Gun Control Act and the National Firearms Act." The firearms examiner who conducted the test actually placed the silencer onto a Walther .22 handgun to conduct his test and determined that it functioned as a silencer. By law, such items must be registered in the National Firearms Act Transfer and Registry record.

Agent Srivastava continued his investigation. He obtained search warrants for Chowanietz's emails in order to determine whether other individuals in the United States had purchased silencers from Chowanietz. During his review of the emails, which numbered in the thousands, he came across emails between Chowanietz and an individual who was later identified as Jerry L. Lester. Agent Srivastava found three email exchanges between Chowanietz and Mr. Lester. Through those exchanges, Mr. Lester sought and ultimately purchased a "silencer SD22." Because the zip code provided by Mr. Lester was the zip code for Ottawa, Kansas, Agent Srivastava referred this case to the ATF Kansas Field Division Office.

Kelly Etnier, a Special Agent with the ATF who was working in Kansas, received the case from Agent Srivastava in March 2006, and began his own investigation. Agent Etnier determined that the individual associated with the email address utilized in the exchanges with Chowanietz was Mr. Lester. He determined that in February 2006, Mr. Lester had purchased a .22 caliber

semi-automatic pistol from a pawn shop, O.H. Pawn, that could possibly accommodate the type of silencer referred to by Agent Srivastava. In making this purchase, Mr. Lester filled out ATF Form 4473. On this form, Mr. Lester represented that he was not a user of any controlled substance.[2] Agent Etnier also obtained confirmation from the ATF's National Firearms Branch that Mr. Lester currently had no firearms registered to him in that registry, despite having purchased several firearms.

Based on this information, Agent Etnier applied for and obtained search warrants for Mr. Lester's business and his residence on May 9, 2006. The affidavits for both search warrants contained the information set forth above, including the information pertaining to Agent Srivastava's successful purchase of a silencer from Chowanietz. Both affidavits referenced two types of firearms offenses, namely, violations related to Mr. Lester's attempt to purchase a silencer, and violations related to his misstating his address on the ATF forms he filled out when he purchased firearms from O.H. Pawn. Agents executed the warrants on May 11, 2006. At around 6:27 a.m., agents made contact with Mr. Lester at his business in Ottawa. They informed him he was not under arrest and explained they were there to execute search warrants at his business and residence. Mr. Lester cooperated fully with the execution of the search warrants. While the search was being executed at Mr. Lester's business, he informed the agents that he had two large dogs at his residence that he did not want to be harmed, so he agreed to ride back to the residence with Agent Etnier to help secure the dogs and let the agents into the house. While

[2] The government also presented evidence at trial and in support of the search warrant that Mr. Lester misrepresented his correct address when filling out Form 4473. Because the jury did not convict Mr. Lester based on the representation about his address, the court has left out many of those facts.

traveling to his residence, Mr. Lester asked Agent Etnier what the agents were hoping to find. Agent Etnier told him they were searching for silencers; Mr. Lester responded that he had never purchased a silencer but was interested in manufacturing them.

While in the vehicle with Mr. Lester, Agent Etnier also asked him if there was anything else that the agents should know about at his residence that could be potentially harmful. Mr. Lester advised that the agents would find marijuana and related paraphernalia. Mr. Lester also told Agent Etnier that he was a user of marijuana medicinally every day, and that he had used marijuana for a long time for unspecified ailments. At this point, Agent Etnier realized that Mr. Lester must not have disclosed this information when he purchased the firearms from the pawn shop because it was a violation of federal law for a user of marijuana to purchase firearms from a federally licensed dealer. Furthermore, Agent Etnier knew it was a violation of federal law for someone who currently uses marijuana on a daily basis to possess firearms. Once they arrived at the residence, Mr. Lester and Agent Stukey secured the dogs. Mr. Lester directed Agent Stukey to the marijuana that he had mentioned to Agent Etnier, which was located in a container under the couch. Mr. Lester was escorted outside the residence where he waited with Agent Stukey while other agents executed the search warrant. As a result of their searches, agents seized two computers, one from the business and one from the residence; documents from both the business and the residence; and six firearms, 63 grams of marijuana, drug paraphernalia, and 10,000 rounds of ammunition from the residence. The officers did not locate a silencer at Mr. Lester's residence or his business.

Prior to trial, Mr. Lester filed a motion to suppress the evidence discovered from the search warrant as well as his statements about using marijuana. The court denied the motion.[3] At the close of the government's evidence at the jury trial, the district court entered a judgment of acquittal on Counts 1 and 2, which charged violations of § 922(a)(6) and § 922(g)(3) arising from a July 2005 firearm purchase. The jury found Mr. Lester guilty on Counts 3, 4, and 5. With respect to Count 3, the jury found Mr. Lester guilty of making a false statement on February 7, 2006 to obtain the firearms charged in the Indictment. On the verdict form, the jury indicated that it unanimously found that the subject matter of the false statement was Mr. Lester's status as a user of a controlled substance. The jury did not find that the subject matter of the false statement was Mr. Lester's correct address. With respect to Count 4, the jury found Mr. Lester guilty of being a user of a controlled substance in possessions of the firearms on February 7, 2006 as charged in the indictment. With respect to Count 5, the jury found Mr. Lester guilty of being a user of a controlled substance in possessions of the firearms and ammunition on May 11, 2006 as charged in the indictment.

[3] On appeal, the Tenth Circuit affirmed the court's decision denying the motion to suppress. *See United States v. Lester*, 285 Fed. Appx. 542 (10th Cir. 2008) (unpublished). Specifically, the Circuit found that the affidavit provided probable cause to search both for the silencer and silencer parts and indicia of control of his residence. *Id*. at 546-47. The Tenth Circuit further concluded that Mr. Lester's statements about his marijuana usage were not obtained in violation of *Miranda* because he was not in custody when he made them. *Id*. at 547.

**Coram Nobis Standards**

Mr. Lester has filed a pro se petition for a writ of coram nobis under the All Writs Act, 28 U.S.C. § 1651(a). The All Writs Act permits "courts established by Act of Congress" to issue "all writs necessary or appropriate in aid of their respective jurisdictions." *See United States v. Denedo*, 556 U.S. 904, 911 (2009). "A petition for a writ of coram nobis provides a way to collaterally attack a criminal conviction for a person . . . who is no longer 'in custody' and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2241." *United States v. Miles*, 923 F.3d 798, 802 (10th Cir. 2019) (quoting *Chaidez v. United States*, 568 U.S. 342, 345 n.1 (2013)).[4] The Tenth Circuit has recognized that federal courts are "permitted to entertain coram nobis applications [only] in extraordinary cases presenting circumstances compelling its use to achieve justice." *See id.* (quoting *Rawlins v. Kansas*, 714 F.3d 1189, 1196 (10th Cir. 2013)). The writ "may not issue when alternative remedies, such as habeas corpus, are available." *United States v. Salgueido*, 185 F.4th 1067, 1072 (10th Cir. 2026) (quoting *Denedo*, 556 U.S. at 911). More precisely, "[a]bsent those traditional grounds that have excused successive or abusive habeas petitions, a petition for writ of coram nobis must be rejected if the claim was raised or could have been raised on direct appeal, through a § 2255 motion, or in any other prior collateral attack on the conviction or sentence." *Id.* at 1073 (quoting *Miles*, 923 F.3d at 804). A petitioner, then, must satisfy three requirements to obtain relief under coram nobis: "(1) the petitioner cannot

---

[4] As the Tenth Circuit recently stated, it is "occasionally overlooked . . . that coram nobis relief may be available to someone in custody, if only rarely." *United States v. Salgueido*, 185 F.4th 1067, 1074 (10th 2026) ("There is no absolute out-of-custody requirement. . . . [H]abeas proceedings are not available to someone in custody who is raising a challenge to a component of the sentence other than custody—such as a challenge to a fine or restitution. In that limited circumstance, therefore, coram nobis may be available.").

obtain or could not have obtained relief through other remedies; (2) absent relief, the petitioner will suffer extraordinary injury—a miscarriage of justice; and (3) petitioner has acted diligently to obtain coram nobis relief, as befitting the magnitude of the injury and the importance of finality." *Salgueido*, 185 F.4th at 1072.

**Mr. Lester's § 922(g)(3) Convictions**

The court begins with Mr. Lester's argument concerning his § 922(g)(3) convictions in Counts 4 and 5. As noted earlier, Mr. Lester was charged with and convicted of violating 18 U.S.C. § 922(g)(3), which prohibits firearm possession by "any person . . . who is an unlawful user of . . . any controlled substance." At trial, the government proved that Mr. Lester was an "unlawful user" as defined in the Court's Instruction No. 20 (Doc. 40), which was consistent with how courts had defined that phrase at the time of trial. Specifically, the court instructed the jury that the phrase "unlawful user of a controlled substance" meant

> a person who uses a controlled substance in a manner other than as prescribed by a licensed physician. The defendant must have been actively engaged in the use of a controlled substance during the period of time he possessed the firearm or ammunition, but the law does not require that he used the controlled substance at the precise time he possessed the firearm or ammunition.

Doc. 40, at 24-25. The government proved this element of the crime through Mr. Lester's admission to Agent Etnier that he was a daily user of marijuana.

As both Mr. Lester and the government recognize, the law on this element has changed significantly in light of the Supreme Court's decision in *United States v. Hemani*, 608 U.S. 772 (2026). In *Hemani*, the Supreme Court held the enforcement of § 922(g)(3) as applied to a defendant merely because he was a regular user of marijuana, without any further proof of

intoxication or dangerousness, violated the Second Amendment. 608 U.S. at 794 (The government cannot "automatically strip [a defendant] of his Second Amendment right to possess a firearm because he uses marijuana a few times a week."). As the government concedes, the evidence it presented at trial proved only that Mr. Lester used marijuana on a regular basis during the time period that he possessed a firearm. No evidence was presented that Mr. Lester was incapacitated through marijuana use when he possessed the firearms at issue or that his use of marijuana rendered him dangerous. In other words, the government's prosecution and the jury's conviction of Mr. Lester on Counts 4 and 5 no longer complies with the Second Amendment.

The court, then, must decide whether *Hemani* and its application to the facts here warrants coram nobis relief. The government, as noted earlier, does not oppose Mr. Lester's petition as to Counts 4 and 5. The first requirement for coram nobis relief is that Mr. Lester cannot obtain or could not have obtained relief through other remedies. *See Salgueido*, 185 F.4th at 1072. Because Mr. Lester has already been released from custody and supervision, coram nobis is the only remedy available to him. *United States v. Miles*, 923 F.3d 798, 802 (10th Cir. 2019) ("A petition for a writ of coram nobis provides a way to collaterally attack a criminal conviction for a person . . . who is no longer 'in custody' and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2241.") (quoting *Chaidez v. United States*, 568 U.S. 342, 345 n.1 (2013)). Moreover, the legal issue raised here could not have been raised on direct appeal, through a § 2255 motion, or in any other prior collateral attack, *see Miles*, 923 F.3d at 804, because the issue became available only after the Supreme Court's decision in *Hemani*. *See Salgueido,* 185 F.4th at 1074 ("There may also be occasions in which a petitioner is excused from raising a legal issue because, as in the habeas context, the issue only became available after a change in law." (citing *Miles*, 923 F.3d

at 804 (applying to coram nobis context the "traditional grounds that have excused successive or abusive habeas petitions") *and* 28 U.S.C. § 2255(f)(3) (providing that in very limited circumstances the time in which a motion under § 2255 must be brought does not begin until Supreme Court recognizes the right invoked by the movant)). In any event, because the government agrees that Mr. Lester is actually innocent, he is excused from failing to file a direct appeal or a § 2255 petition. *United States v. Lujan*, No. 22-2014, 2022 WL 17588500, at *4-5 (10th Cir. Dec. 13, 2022) (defendant's actual innocence excused his failure to seek relief through a direct appeal or § 2255 motion where Supreme Court decision in *Rehaif* meant that defendant's § 922(g)(1) conviction was based on conduct that was not prohibited by law). There is no dispute here that Mr. Lester satisfies the first requirement with respect to his petition for relief on Counts 4 and 5.

The second requirement is that, absent relief, Mr. Lester will suffer extraordinary injury—a miscarriage of justice. *See id*. at 1072. Here, the government asserts that *Hemani* has rendered Mr. Lester actually innocent of Counts 4 and 5 such that he necessarily satisfies the second requirement for coram nobis relief. The Tenth Circuit's decision in *Lujan*, while unpublished, is particularly instructive here. Mr. Lujan, through a petition for coram nobis relief, sought the vacatur of his 2012 conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). *Lujan*, 2022 WL 17588500, at *1. The government did not oppose Mr. Lujan's request for coram nobis relief, but the district court denied the writ. *Id*. On appeal, Mr. Lujan and the government both argued that the district court should have granted coram nobis relief. *Id*. The Circuit agreed. *Id*.

By way of background, Mr. Lujan had been convicted in state court of the New Mexico crime of larceny. *Id.* He received a deferred sentence. *Id.* In 2007, the case was dismissed after he successfully completed the conditions for his deferred sentence. *Id.* In 2012, Mr. Lujan pleaded guilty in federal court to being a felon in possession of a firearm, in violation of § 922(g)(1). *Id.* Mr. Lujan was sentenced to 18 months in prison followed by a two-year term of supervised release. *Id.* Consistent with the terms of his plea agreement, he did not appeal his conviction or sentence and he did not collaterally attack his conviction or sentence through a 28 U.S.C. § 2255 motion. *Id.* He completed his term of supervised release in July 2015. *Id.*

In 2019, the Supreme Court addressed the *mens rea* requirement of § 922(g). *Id.* It held that "in a prosecution under 18 U.S.C. § 922(g) . . . , the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* (citing *Rehaif v. United States*, 588 U.S. 225, 237 (2019)). Prior to *Rehaif*, the New Mexico Supreme Court issued a decision answering a certified question from the Circuit in a § 922(g)(1) case. *See id.* (citing *United States v. Reese*, 326 P.3d 454, 455, 456 (N.M. 2014)). *Reese* confirmed "that upon the satisfactory completion of all conditions for a deferred sentence and the resulting dismissal of all charges, New Mexico restores a person's civil rights." *Id.* (quoting *Reese*, 326 P.3d at 455). Because a conviction does not count as a conviction for purposes of § 922(g)(1) if the defendant "has had civil rights restored," 18 U.S.C. § 921(a)(20), Mr. Lujan's completion of a deferred sentence in New Mexico removed the conviction from the purview of § 922(g)(1). *Id.*

One year after *Rehaif*, Mr. Lujan filed his petition for a writ of coram nobis attacking his § 922(g)(1) conviction for being a felon in possession. *Id.* at *2. Mr. Lujan argued he had established

his entitlement to coram nobis relief because he had valid reasons for not attacking his conviction earlier because *Rehaif* was not decided until 2019, the usual remedy under § 2255 was not available because he was no longer in custody, there was a fundamental error, and his conviction was invalid because the conduct he admitted to was not a crime. *Id*. While the Circuit noted that the procedural vehicle in the appeal was "unusual," it described the question presented in the appeal as a "simple" one: "whether Mr. Lujan's conviction for an offense he did not commit should be vacated." *Id*. at *3. As noted by the Circuit, to prove that Mr. Lujan violated § 922(g)(1), the government would need to show that he had a qualifying felony conviction within the meaning of § 922(g)(1), and that he knew he was a felon when he possessed the firearm. *Id*. Because no reasonable juror, after *Reese* and *Rehaif*, could resolve those factual questions against Mr. Lujan on the evidentiary record, Mr. Lujan was actually innocent. *Id*. at *4 ("Because his § 922(g)(1) conviction is based on conduct that was not prohibited by law, Mr. Lujan is actually innocent."). Ultimately, the Circuit held that Mr. Lujan satisfied the miscarriage of justice requirement for coram nobis relief because Mr. Lujan was convicted for an act that the law does not make criminal. *Id*. at *5 (citing *Davis v. United States*, 417 U.S. 333, 346-47 (1974) (explaining that a conviction and punishment "for an act that the law does not make criminal ... inherently results in a complete miscarriage of justice")); *accord United States v. Miles*, 923 F.3d 798, 805 (10th Cir. 2019) ("Perhaps coram nobis is a proper avenue for relief if a claim is based on Supreme Court law that was declared after the defendant had fully served the criminal sentence."). The court finds that *Lujan* is sufficiently similar to the circumstances here that it provides sound guidance for the court regardless of its unpublished status. It is undisputed that § 922(g)(3) is unconstitutional as applied to Mr. Lester given the evidence presented at trial. Because no reasonable jury could find based

on the evidence at trial that Mr. Lester was an "unlawful user of a controlled substance" for purposes of § 922(g)(3), he is actually innocent and his convictions for that crime constitute a miscarriage of justice.

Lastly, Mr. Lester must establish that he has acted diligently to obtain coram nobis relief. *Salgueido*, 185 F.4th at 1072. He clearly meets this requirement, filing his petition shortly after the *Hemani* decision. And even a delayed coram nobis petition will not bar relief in a clear case of actual innocence. *See Lujan*, 2022 WL 17588500, at *4 (citing *United States v. Lesane*, 40 F.4th 191, 201 (4th Cir. 2022)).

For the foregoing reasons, and in light of the government's agreement in this specific context, the court concludes that Mr. Lester has established his entitlement to the writ and to have his § 922(g)(3) convictions vacated.

**Mr. Lester's § 922(a)(6) Conviction**

The court turns, then, to Mr. Lester's arguments concerning his § 922(a)(3) conviction in Count 3. As noted earlier, Mr. Lester was charged with and convicted of violating 18 U.S.C. § 922(a)(6), which prohibits making false statements to acquire firearms. In his initial petition for coram nobis relief, Mr. Lester argues that this conviction must be vacated because the warrant issued by the magistrate judge to search his residence was defective in its description of the device sought in the search. The government challenges this argument. As noted by the government, that argument clearly does not satisfy the stringent requirements for coram nobis relief. The

argument could have been made on direct appeal or in his § 2255 petition and, in any event, he has not shown due diligence in raising that issue. This basis for relief, then, is denied.[5]

Mr. Lester's primary argument in support of his petition with respect to Count 3 is again based on *Hemani*. By way of background, federal law makes it unlawful for any person "in connection with the acquisition or attempted acquisition of any firearm" from a licensed dealer "knowingly to make any false or fictitious oral or written statement" regarding "any fact material to the lawfulness of the sale." 18 U.S.C. § 922(a)(6). The court instructed the jury, to convict Mr. Lester of Count 3, the government had to prove beyond a reasonable doubt that: (1) Mr. Lester made a false statement while obtaining a firearm from a licensed dealer; (2) Mr. Lester knew the statement was false; and (3) the statement "was intended to or was likely to deceive about a material fact, *i.e*., one which would affect the legality of the transfer of the firearm from the dealer to the defendant." Doc. 40, Inst. 19. The government here prosecuted Mr. Lester based on his lying about his drug usage on ATF Form 4473, which individuals must complete when purchasing firearms from a federally licensed dealer. On the verdict form, the jury expressly found that Mr. Lester, for purposes of Count 3, falsely represented that he was not a user of any controlled substance.

According to Mr. Lester, his status as "a user of any controlled substance" is no longer material because, as recognized in *Hemani* and as applied to Mr. Lester, that status, without more,

[5] It may be that Mr. Lester has abandoned this argument in any event, as it is not mentioned in his supplement reply brief (doc. 283). In addition, Mr. Lester raises additional arguments in his reply brief (doc. 280) about an alleged *Brady* violation and the sufficiency of the evidence presented at trial. Because these arguments were raised for the first time in his reply, the court does not address them. *Minshall v. McGraw Hill Broadcasting Co*., 323 F.3d 1273, 1288 (10th Cir. 2003).

was not legally disqualifying at the time he completed ATF Form 4473. The court has uncovered only one case that has squarely addressed this issue and it finds the reasoning in that case persuasive. In *United States v. Howard*, No. CR24-4005-LTS-KEM, 2026 WL 3216657 (N.D. Iowa Oct. 27, 2026), the jury convicted the defendant of two counts of possession of a firearm by a drug user in violation of § 922(g)(3) and two counts of making false statements during the purchase of a firearm in violation of § 922(a)(6). 2026 WL 3216657, at *1. The district court then stayed the proceedings prior to sentencing pending the Supreme Court's decision in *Hemani*. *Id.* at *2. After *Hemani* was issued, the district court, on the government's motion, dismissed the § 922(g)(3) counts. *Id.* When the defendant then indicated an intent to pursue dismissal of the § 922(a)(6) counts, the court ordered additional briefing. *Id.*

The district in *Howard* held that the defendant had waived or forfeited his arguments as to the § 922(a)(6) counts by not raising those arguments earlier. *Id.* at *3. Nonetheless, the court reached the merits of the defendant's argument that because his use of controlled substances was insufficient to sustain a conviction under § 922(g)(3) after *Hemani*, his representation on Form 4473 was not material to the legality of the firearm sale for purposes of § 922(a)(6). *Id.* at *4. In rejecting that argument, the court explained:

> Even if *Hemani* could be read to affect ATF Form 4473, it would require a "yes" answer from Howard the way the question was phrased at the time of Howard's firearm purchases in light of the evidence presented at trial. *Hemani* was an as-applied challenge like Howard's and suggests that the type of drug, extent of use, effects and other factors are what will determine whether an individual may possess a firearm under § 922(g)(3). *See Hemani*, 608 U.S. at 794 (explaining that the holding is narrow and does not address efforts to ban addicts, those presently intoxicated, other laws Congress might adopt after determining that users of a particular drug pose a special risk of misusing firearms, prosecutions that come with individualized proof that the defendant's use of a controlled substance renders him a danger or proof that a certain drug always renders its users dangerous because of

> its potency or for some other reason). The 4473 forms do not allow individuals to decide for themselves whether their unlawful use is sufficient to prohibit them from possessing a firearm. They must answer truthfully as to use of, or addiction to, a controlled substance. There is no timeframe to consider and no inquiry as to the amount of use, potency, effects or other factors. Whether an individual's use is ultimately enough to prohibit possession is a separate issue as to whether one knowingly made a false statement.

*Id*. at *5.

The court agrees with *Howard* that the Supreme Court's decision in *Hemani* does not render Mr. Lester's statement as to his status as a drug user on Form 4473 immaterial for purposes of assessing the legality of the sale. Mr. Lester's response on the form was false, he knew it was false when he made it, and it was and remains material to the legality of the sale. *See Dennis v. United States*, 384 U.S. 855, 867 (1966) ("The governing principle is that a claim of unconstitutionality will not be heard to excuse a voluntary, deliberate and calculated course of fraud and deceit. One who elects such a course as a means of self-help may not escape the consequences by urging that his conduct be excused because the statute which he sought to evade is unconstitutional."); *Bryson v. United States*, 396 U.S. 64, 72 (1969) ("[I]t cannot be thought that as a general principle of our law a citizen has a privilege to answer fraudulently a question that the Government should not have asked. Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them. A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood."). Accordingly, Mr. Lester's petition for coram nobis relief with respect to Count 3 is denied.

**Appropriate Relief**

Other than asking the court to vacate his convictions, Mr. Lester did not ask for additional specific relief until his reply brief and his supplemental reply brief. Thus, the court will provide the government an opportunity to file a supplemental response as to the appropriate relief in this case. The government should address the special assessment paid on Counts 4 and 5; the fine assessed to Mr. Lester; whether and to what extent the forfeiture orders are affected; and any other relief appropriate. *See United States v. Lockhart*, 165 F.4th 933, 936 (5th Cir. 2026) ("Conviction vacatur under coram nobis, after all, operates to alleviate ongoing disabilities suffered as a consequence of a conviction."). Once the court has reviewed that response, it will determine whether it needs additional input from Mr. Lester.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the petition for writ of coram nobis (doc. 274) is **granted in part and denied in part**. The court grants the writ with respect to Mr. Lester's § 922(g)(3) convictions in Counts 4 and 5 and hereby **vacates those convictions**. The court denies the writ with respect to Mr. Lester's § 922(a)(6) conviction in Count 3.

**IT IS FURTHER ORDERED BY THE COURT THAT** the government shall file a supplemental response addressing the appropriate relief in this case on or before **December 18, 2026.**

**IT IS SO ORDERED.**

Dated this 24th day of November, 2026, at Kansas City, Kansas.

s/John W. Lungstrum
HON. JOHN W. LUNGSTRUM
United States District Judge